# CHARLESTON.

## LOVETT *v.* WEST VIRGINIA CENTRAL GAS CO.

### Submitted June 14, 1912.   Decided October 21, 1913.

1. BOUNDARIES—*Conflicting Elements—Oil and Gas Lease—Construction.*

     While a call for quantity will never control other definite description of land, yet when all other elements of description lose their superiority through ambiguities and uncertainties the quantity called for in a deed may be considered in ascertaining the land intended to be conveyed.   (p. 43).

2. CONTRACTS—*Construction—Intent.*

     If a written contract is ambiguous in meaning, the practical construction put on it by the parties thereto may be considered in explanation of its true meaning.   (p. 44).

3. EVIDENCE—*Offer of Compromise—Admission.*

     Where, in an offer of compromise, a plain concession is in fact made, and not stated merely hypothetically for the purpose of buying peace, it is allowable in evidence as an admission.   (p. 44).

4. EJECTMENT—*Right of Recovery—Possession.*

     The doctrine that a plaintiff in ejectment may recover on the strength of prior possession without more has no application where the defendant has acquired the possession peaceably and in good faith under claim of title.   (p. 45).

5. TRIAL—*Direction of Verdict.*

     In a case not turning on conflicting oral testimony involving the credibility of witnesses, the court may properly direct a verdict for

the party in whose favor the evidence plainly and decidedly preponderates.   (p. 45).

(MILLER and LYNCH, JUDGES, absent).

Error to Circuit Court, Lewis County.

Action by James B. Lovett against the West Virginia Central Gas Company.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Robert L. Bland,* for plaintiff in error.

*W. W. Brannon,* for defendant in error.

ROBINSON, JUDGE:

Defendant, claiming under an oil and gas lease, entered on plaintiff's land.   By this action in ejectment plaintiff sought to oust defendant from possession.   At the trial, when the evidence was all in, the court directed a verdict for defendant, and judgment in its behalf followed.   Assigning that the court erred in the admission and refusal of evidence and in directing a verdict, plaintiff seeks reversal of the judgment.

The lease under which defendant entered was executed by plaintiff and his wife to the Eastern Oil Company.   It is the same lease that plaintiff and his wife sought to have cancelled by a suit in chancery which was ended adversely to them by a decision of this court reported in 68 W. Va. 667.   In that suit the lease was attacked as one forfeited and void.   But it was adjudged that the lease was a valid, subsisting one.   That suit raised no question as to what parcels of land were embraced in the lease.   After the determination of the chancery cause, plaintiff, who had failed therein to relieve all of the land from the force of the lease, for the first time claimed that a parcel of about eleven acres, adjoining the two other parcels which are unquestionably within the description of the lease, was not covered by that description.   Defendant, as assignee of the lease, had theretofore entered on the premises and drilled a producing gas well on one of the parcels.   When defendant came to begin operations on the eleven acre parcel, the gates thereto were

barred. Nevertheless defendant's servants entered and drilled another gas well. Thereafter plaintliff began this ejectment suit.

The description of the land in the lease is the general one ordinarily found in oil and gas leases. It calls for a tract of land containing ninety-three acres, bounded as follows:

"On the north by lands of Wilmer Norris,

On the east by lands of Polk and Ceph. Butcher,

On the south by lands of Geo. N. Butcher and Bailey Bros.,

On the west by lands of Geo. W. Dean."

Plaintiff and his wife, who executed the lease, owned three parcels of land, all adjoining. Together these three parcels make up the same acreage called for in the lease. Title to the parcel of eleven acres involved in this, ejectment suit, and to one of the other parcels, much larger than the eleven acres, is in plaintiff; title to the remaining parcel is in his wife. The larger parcel belonging to plaintiff and the parcel belonging to his wife make a long but fairly regular boundary of land. But the parcel of eleven acres adjoins plaintiff's other parcel by only a narrow neck and juts out therefrom so that it alone is nearly surrounded by lands of others. The location of the eleven acres is to the east of the body of the other two parcels. Plaintiff says that the call for adjoiners on the east line of the land as given in the lease will not allow the eleven acres to be included. In other words, he says that the lands of Polk and Ceph Butcher as called for in the description are not on the east of the eleven acres. True, by reason of the peculiar jutting out of the eleven acre parcel from the body of the other two parcels, the Butcher lands are to the west and north of the eleven acres. But at the same time they are directly to the east of a portion of the remaining body of the land, and the call does to an extent answer for a boundary of the whole. It is not totally inconsistent with an inclusion of the eleven acre parcel. However we may look at the land, whether as a tract containing the two parcels or the three, the description for the northern and eastern boundary is incomplete. In either case, there are other adjoiners that might have been named. Still, the calls for the north and east as given in the lease are not contrary to the taking in of the eleven acres. Then when we look at the call for the south, we find it particularly in harmony

with an inclusion of the eleven acres; for, the land of Geo. N. Butcher is squarely and regularly south of the eleven acres. It is also true that the Geo. N. Butcher land might be considered a proper call for the southern boundary even if we exclude the eleven acres, but that plainly indicates that the eleven acres is to be included. The call for the east is incomplete and leaves it uncertain whether the eleven acres is to be included. The call for the south speaks an intention to take in the small parcel, but it is not conclusive in that regard. Thus we observe that the boundary lines given in the lease are insufficient for the purpose of locating the land definitely and certainly. They are indeed consistent with either the inclusion or the exclusion of the parcel of eleven acres. Whither then may we look for further indicia of the intention of the parties?

This case is plainly one where a consideration of the quantity is proper in determining whether the parties intended that the lease should cover all of the three parcels. While a call for quantity will never have effect as controlling other definite description of land, yet when there is plainly such ambiguity in description as we have here, quantity may be considered for the purpose of finding the intention of the parties. When the general boundaries given may mean the inclusion of a parcel or the exclusion of it, as in this case, certainly the number of acres which the parties have fixed in describing the land may be looked to. Particularly so is this in relation to an ordinary oil and gas lease. In such a lease the acreage is usually stated with certainty because of the relation that it ordinarily has to the fixing of the commutation money to be paid. The land owner is particular to see that the acreage of the land he intends to lease is all that it really is, while the lessee is interested in having it stated no larger than the actual acreage of the land. Now, in the case before us the parties say by the lease that the land intended to be leased is a tract containing ninety-three acres. If the parcel of eleven acres is included, the acreage is what the parties said it should be; otherwise it is not. The stating of the quantity of ninety-three acres is further indicia that the parties intended to cover the small parcel by the lease. Where all other elements of description lose their superior value through am-

biguities and uncertainties resort may be had to quantity. "Where the description of land by monuments, distances or otherwise is vague and indefinite, by reason of conflicting lines or omission of a line, or from any other cause, the statement of the acreage is an essential part of the description." *Smith* v. *Owens,* 63 W. Va. 60.

But, perhaps, the clearest insight into what the parties mean by indefinite and ambiguous terms in a contract may be had from the practical construction put on it by themselves. "If a contract is ambiguous in meaning, the practical construction put upon it by the parties thereto is of great weight, even though the contract is in writing, and, ordinarily, is controlling." 2 Page on Contracts, sec. 1126. Now, plaintiff, by a letter which he wrote to an agent of defendant while the chancery cause to which we have referred was pending, in specific terms recognized this very lease as embracing all of the three parcels. Here is what he says: "The tract of land embraced in the lease in controversy in the chancery cause referred to, is made up of three parcels, one containing 33¾ acres, one containing about 11 or 12 acres, and one containing about 48 acres. The first named tract is owned in fee simple by my wife, B. E. Lovett; the other two tracts are owned by myself in fee simple." Surely this construction of the description of the lease by the plaintiff himself needs no comment. He was too explicit in his statement ever to be misunderstood. Besides, the letter was accompanied by a pencil sketch showing the three parcels of land.

It is submitted, however, that the court erred in admitting the letter and sketch in evidence, because they relate only to a compromise proposition. The letter was one offering a proposition for the compromise of the chancery suit then pending. That suit did not at all involve the question whether the small parcel was embraced in the lease. As we have said, it sought a wiping out of the lease in entirety on the ground that the lease was void. The proposition of compromise related only to the issue in that suit. This suit in ejectment at that time had not been conceived. The admission in the letter and its accompanying sketch that the lease embraced all of the three tracts was in no wise material to the proposition submitted in

the letter for a settlement of the issue in the chancery cause. Plaintiff was not, in an effort to buy peace, admitting something then in issue. The admission he made was not induced by the effort to compromise, since it was wholly unnecessary to any settlement of the litigation then pending. It was stated as a fact, and not merely hypothetically. "If a plain concession is in fact made, it is receivable, even though it forms part of an offer to compromise." 2 Wigmore on Evidence, sec. ·1061. The book just cited contains an enlightening discussion on this point. The court did not err in allowing the letter and sketch to go in evidence.

Nor did the court err in admitting the record of the chancery cause and the evidence of witnesses for the purpose of further showing plaintiff's practical construction of the terms of description in the lease. As we have shown, the description was ambiguous. Admissions and acts of plaintiff tending to establish his understanding of the meaning of the description were allowable in evidence to clear away the ambiguity.

It is further submitted that plaintiff should have been permitted to prove, by a copy of a deed or assignment which he offered, that defendant had parted with title to the lease before it entered on the eleven acres, and that therefore it was a mere intruder thereon. The evidence, however, shows that the entry on the land was made by defendant not as a mere intruder. As between plaintiff and defendant, the latter was in rightful possession of the whole of the land, including the eleven acres, under claim by the lease, at the time plaintiff says his peaceable possession was ousted by an intrusion. The rule enunciated in *Tapscott* v. *Cobbs,* 11 Grat. 172, relied on. by plaintiff, does not apply under the evidence herein, and the refusal to admit the paper offered was proper. The doctrine that a plaintiff in ejectment may recover on the strength of prior possession without more has no application where the defendant has acquired the possession peaceably and in good faith under claim of title. *Marshall* v. *Stalnaker,* 70 W. Va. 394.

Plaintiff did not testify. · He denied none of the practical construction which it was proved he had placed on the terms of the lease. In other particulars, and upon the whole, the evi-

dence did not appreciably tend to support his case as against the evidence of defendant. A verdict against defendant could not rightly have stood on a motion to set the same aside. In such a case as this one, not turning on conflicting oral testimony involving the credibility of witnesses, the court may properly instruct the jury to return a verdict for the party in whose favor the evidence plainly and decidedly preponderates. *White* v. *Hoster Brewing Co.*, 51 W. Va. 259.

An order will be entered affirming the judgment.

*Affirmed.*